## Allison's Estate

*Luria & Still*, for petitioner.
*McClean Stock*, for trustee.

GROSS, P. J., March 13, 1946. — This proceeding comes into court on the petition of Maggie J. Allison, mother of Edgar Allison, Jr., sometimes known as Edgar W. Allison, Jr., praying for the termination of a trust inter vivos. The relevant facts are as follows:

Edgar (W.) Allison, Jr., while in or about to enter the military service of the United States, by an instrument of writing dated July 1, 1943, created a trust in which The Drovers & Mechanics National Bank of York was made trustee of the sum of $1,750, to be invested and the income paid to his mother, petitioner, during her natural lifetime or until the trust was revoked or amended under a reservation therein contained, and at her death to pay the principal thereof to the settlor. The trust instrument was never revoked or amended in any particular.

Pursuant to the authority vested in him under the Federal Missing Persons Act of March 7, 1942, 56 Stat. at L. 143, as amended (50 U. S. C. App. §§1001-17), the Secretary of War, through the Adjutant-General of the Army, on February 4, 1946, certified to

Maggie J. Allison, petitioner, that Edgar (W.) Allison, Jr., was killed in action on January 17, 1945, in the European area.

It is an admitted fact that Edgar (W.) Allison, Jr., was never married, left no will, and that under the intestate laws of the Commonwealth his mother, being his only surviving parent, would be entitled to receive his whole estate.

The trustee concedes, and we think properly so, that if the settlor be in *fact* dead, the trust, at the request of his mother, she being the only person interested, must be terminated, and looking to that end has filed its first and final account of its administration of the trust, which is before us for audit and adjudication.

The only evidence submitted to prove the death of Edgar (W.) Allison, Jr., is the certification of the War Department above referred to, and the question therefore arises, is this sufficient to prove the fact of death, or must the petitioner wait for the maturity of the presumption arising after seven years' absence of her son, and then proceed under section 6 of the Fiduciaries Act of June 7, 1917, P. L. 447, relating to presumed decedents?

This question, we think, has been answered by the Act of April 10, 1945, P. L. 187, which became effective immediately upon its passage, and, inter alia, provides as follows:

"Section 1. A written finding of presumed death made by the Secretary of War, the Secretary of the Navy, or other officer, or employee of the United States authorized to make such finding pursuant to the Federal Missing Persons Act (56 Stat., 143, 1092, and Pamphlet Laws, 408 Ch., 371, 2d Sess. 78th Cong., 50 U. S. C. App. Supp., 1001-17), as now or hereafter amended, or a duly certified copy of such finding shall be received in any court, office, or other place in this

State as prima facie evidence of the death of the person therein found to be dead, and the date, circumstances, and place of his disappearance."

Thus far, it would seem that Africa's Estate, 54 D. & C. 351, is the only decision on the effect of the Federal Missing Persons Act above referred to on the presumption of death arising from a certification made pursuant to said act. Judge Richards, in Africa's Estate, was inclined to think that the certification of the War Department was of value only so far as Federal benefits are concerned, and in this conclusion we think that he was entirely correct.

The Legislature of Pennsylvania, however, in passing the Act of 1945, expressly refers to the Federal Missing Persons Act and, in our opinion, clearly intended that a certification of death made by the proper authority under said act of Congress should have the effect of establishing, in the absence of all other evidence to the contrary, the death of the person certified to be dead.

While the certifications under the Federal Missing Persons Act are in many instances based on investigation only, and the instances when such findings have been disclosed to be incorrect have not been infrequent, nevertheless, proceedings under section 6 of the Fiduciaries Act of 1917, relating to presumed decedents, admit of the same possible errors, and perhaps greater, by reason of the fact that a certification of death under the Federal Missing Persons Act has the support of the perilous adventure and circumstances under which the person so certified as being dead was engaged, which is not usually true under the Presumed Decedents Act of this State.

From our examination of the act of assembly above referred to, we find nothing in it which challenges its validity and we therefore hold that under its provisions a certification under the Federal Missing Per-

sons Act of the death of a person is sufficient to establish the death of such person under the laws of Pennsylvania.

We therefore terminate this trust, and the balance on the account of the trustee will be awarded to petitioner, subject to her filing a bond to be approved by section 6(h) of the Fiduciaries Act of June 7, 1917, P. L. 447.